# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                 CRIM. NO. 14-20529

    v.                      HON. TERRENCE G. BERG

HERBERT T. FELTON, JR.,

      Defendant.

_____/

## ORDER DENYING DEFENDANT'S APPLICATION FOR RULE 17(c) SUBPOENA (DKT. 48) AND GRANTING GOVERNMENT'S MOTION TO QUASH APPLICATION (DKT. 50)

In this criminal case, the Government alleges that Defendant Herbert T. Felton Jr. ("Defendant") transported a minor (identified by his initials – "P.W.") across state lines (from Illinois to Michigan) to engage in sexual activity. The charges also include several counts of receipt, possession and manufacture of child pornography, also involving P.W. (Dkt. 53; Superseding Indictment).

This case is set for trial on June 12, 2017. During discovery, defense counsel learned that P.W. had sought treatment with a mental health counselor shortly after the events alleged in the indictment took

place. Defendant has filed an ex parte application for a Rule 17 subpoena (Dkt. 48) seeking production of the counselor's records. Specifically, Defendant requests the Court to "conduct an in camera review of … all written notes, documents, and audio recordings from mental health counseling of [P.W.], including statements made, but limited to the facts and circumstances of his involvement with [Defendant]." Defendant seeks to have the counselor's treatment notes turned over to the Court because he believes they may contain prior statements of P.W. that could be inconsistent with P.W.'s eventual trial testimony. Thus, Defendant would like the Court to review the records and, only after hearing P.W.'s testimony, make a determination as to whether any of the records should be turned over to Defendant to be used as impeachment material.

The Government, on behalf of P.W., objects[1] to the production of the treatment notes, and has filed a motion to quash the subpoena ap-

---

[1] Defendant argues in his response to the Government's motion to quash that the Government does not have standing to object to the subpoena on P.W.'s behalf (Dkt. 54 at 3-5). This argument is not well-taken. The Government's reply brief (Dkt. 57) states that – as ordered by the Court (Dkt.49) – it notified P.W.'s representative of Defendant's subpoena application, and that P.W.'s representative informed the Government that P.W. objected. The Government has standing to object on behalf of P.W. *See* Fed. R. Crim. P. 17 (Advisory Committee Notes, 2008 Amendments) (noting amended Rule 17 implements the Crime Victims' Rights Act, codified at 18

plication (Dkt. 50). Defendant filed a response to this motion (Dkt. 54), and the Government filed a reply (Dkt. 57). The Court heard oral argument on these motions on May 11, 2017. For the reasons set forth below, Defendant's application for a Rule 17 subpoena is **DENIED**, and the Government's motion to quash Defendant's application is **GRANTED**.

## FACTUAL BACKGROUND

The facts that led to Defendant facing criminal charges are as follows. On May 7, 2014, P.W., then a 14-year-old boy living in Tilton, Illinois was reported missing (Dkt. 1, Compl. ¶ 1). Video from a nearby bus station showed him boarding a bus sometime after 11:45 a.m. *Id.* P.W.'s father obtained his son's cell-phone records, and noticed that they contained calls with an unfamiliar out-of-state number with an "810" area code. *Id* ¶ 2. On May 8, 2014, P.W.'s father travelled to Michigan, and met with a police detective. *Id.* The detective was able to trace the unknown 810 telephone number to Defendant, who was living in Flint, Michigan. *Id.* Around midnight, police arrived at Defendant's home, and located both Defendant and P.W. *Id.* Defendant was

---

U.S.C. § 3771(a)(8), which states that victims have a right to respect for their "dignity and privacy," and which authorizes the Government to assert this right on behalf of victims – 18 U.S.C. § 3771(d)(1).

arrested, and P.W. was interviewed by local police. This interview was summarized in written notes. The next day, May 9, 2014, P.W. was interviewed at the Genesee County Sheriff's Office. This interview was video-taped.

Subsequent investigation revealed suspected illicit images of P.W. on Defendant's cell-phone. This discovery led to additional charges in a superseding indictment for manufacturing, receipt, and possession of child pornography (Dkt. 53). As part of the ongoing investigation, P.W. was interviewed a third time by an FBI child forensic interviewer on July 28, 2014. This interview was also video-taped. The most salient aspect of P.W.'s two video-taped interviews, for purposes of the motions now before the Court, is that P.W. apparently made inconsistent statements in the two interviews. The Court has not been provided the videos themselves, but during oral argument on these motions, counsel for the Government indicated that P.W. denied any sexual contact between him and Defendant at the May 9, 2014 Sheriff's interview, but confirmed such sexual contact at the July 28, 2014 FBI interview.

Shortly after his father travelled to Michigan to retrieve him, P.W. began meeting with a counselor at the Vermilion County Rape Crisis

Center in Tilton, Illinois.  Specifically, on May 12, 2014, P.W. and his mother met with Crystal Burson, the clinical coordinator of the Crisis Center.  Ms. Burton is not a licensed psychotherapist or social worker, but has a master's degree in "family relations," completed 40 hours of counselor training, and holds a "Qualified Mental Health Professional (QMHP)" certification.  P.W. attended his first individual counseling session with Ms. Burson on May 21, 2014, and continues to consult with Ms. Burson on a weekly basis as scheduling permits.

### ANALYSIS

In criminal cases, Rule 17(c) authorizes a party to issue a subpoena duces tecum.  Under this rule, the Court has discretion to direct a witness to produce subpoenaed documents in court prior to trial for inspection by the parties and their attorneys. *See* Fed. R. Cr. P. 17(c). Rule 17(c) provides a mechanism for the production and inspection of evidentiary material before trial for the purpose of expediting trial, but it is not intended to supplement or authorize a broader scope of discovery in criminal cases than that which is already provided under Rule 16, Rule 26.2, the *Jencks* Act, and the *Brady/Giglio* line of cases.  *See Bowman Dairy Co. v. United States*, 341 U.S. 214, 220, 71 S.Ct. 675, 95

L.Ed. 879 (1951); *United States v. Nixon*, 418 U.S. 683, 697-700, 94

S.Ct. 3090, 41 L.Ed.2d 1039 (1974). Specifically, Rule 17(c)(1) states:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Rule 17(c)(3) governs subpoenas that request the production of personal

or confidential material related to a victim, and states:

> After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.

In this case, after Defendant filed his application for a Rule 17 subpoena, the Court required the Government to notify P.W. of Defendant's

subpoena application, and authorized the Government to file any objections on P.W.'s behalf (Dkt. 49).

A party seeking to obtain pretrial document production by means

of a subpoena duces tecum must make a preliminary showing that the

information he seeks is relevant, admissible, and specific. *See United*

*States v. Nixon*, 418 U.S. 683, 700, 94 S. Ct. 3090, 3103, 41 L. Ed. 2d 1039 (1974). Courts have applied this standard to subpoenas duces te- cum directed to third parties. *See United States v. Reyes*, 239 F.R.D. 591, 597 n. 1 (N.D. Cal. 2006). Document production prior to trial pur- suant to Rule 17(c) is warranted only where the proponent has estab- lished that: (1) the requested documents are evidentiary and relevant; (2) the proponent cannot, even with due diligence, procure them; (3) the defendant cannot adequately prepare for trial without obtaining their production in advance; and (4) the request was made in good faith and is not a fishing expedition. *See United States v. Hughes*, 895 F.2d 1135, 1146 (6th Cir. 1990) (citing *United States v. Nixon*, 418 U.S. at 699).

In contrast to the broad scope of discovery in civil cases, the dis- covery available to a criminal defendant is relatively constricted, and is generally circumscribed by the following three rules: (1) Federal Rule of Criminal Procedure 16, controlling discovery of materials within the government's possession, custody, or control regarding the defendant, *see United States v. Llanez-Garcia*, 735 F.3d 483, 493 (6th Cir. 2013); (2) the *Jencks* Act, 18 U.S.C. § 3500 and Federal Rule of Criminal Proce- dure 26.2, which hold that the Government must provide statements or

7

reports in its possession of witnesses[2] who testify at trial; and (3) the doctrine set forth in *Brady*. *See United States v. Presser*, 844 F.2d 1275, 1285, fn. 12 (6th Cir. 1988) (stating that in most criminal prosecutions, these three rules "exhaust the universe of discovery to which the defendant is entitled").

Defendant and the Government note – correctly – that because the Government is not currently in possession of P.W.'s counseling records, and because the Government will not call the counselor as a witness at trial, these documents require a subpoena request pursuant to Rule 17(c). The defendant need not seek discovery materials from the government prior to requesting a subpoena under Rule 17 "[b]ecause the government does not possess or control all of the materials potentially relevant to a defendant's case, [ ] is not obligated to acquire materials possessed or controlled by others, [and] the criminal-procedure rules do not make the government the gatekeeper to evidence it may not have." *United States v. Llanez-Garcia*, 735 F.3d 483, 494 (6th Cir. 2013).

In considering Defendant's subpoena application, this Court must also weigh the fact that the requested records are privileged. A psycho-

---

[2] The Government states that it will not call P.W.'s counselor as a witness at trial (Dkt. 50 at 13).

therapist/patient evidentiary privilege has been well-established in the Sixth Circuit for some time. *See United States v. Hayes*, 227 F.3d 578, 581–82 (6th Cir. 2000) citing *In re Zuniga*, 714 F.2d 632, 637 (6th Cir. 1983). The Supreme Court has also recognized such a privilege, holding that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Jaffee v. Redmond*, 518 U.S. 1, 15, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). The Court observed that recognizing as privileged psychotherapist/patient discussions in the course of therapy would likely facilitate "an atmosphere of confidence and trust" conducive to meaningful treatment. *Id*. at 10, 116 S.Ct. 1923. The Court also reasoned that a federal psychotherapist/patient privilege would "serv[e] public ends" as "[t]he mental health of [the American citizen] ... is a public good of transcendent importance." *Id*. at 11, 116 S.Ct. 1923. The Court observed that all fifty States and the District of Columbia had "enacted into law some form of psychotherapist privilege." *Id*. at 12, 116 S.Ct. 1923. The Court rejected a "balancing component ... [m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of

the relative importance of the patient's interest in privacy and the evidentiary need for disclosure." *Id.* at 17, 116 S.Ct. 1923. The Court declined to identify all situations where the privilege would and would not apply, and observed in a footnote: "[W]e do not doubt that there are situations in which the privilege must give way, for example, if a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist." *Id.* at 18 n. 19, 116 S.Ct. 1923 (emphasis added).

The analysis here is slightly altered, given that Ms. Burson is not a licensed psychotherapist, but rather a rape crisis counselor. However, Illinois recognizes a strong privilege protecting communications with rape crisis counselors, stating that "no rape crisis counselor shall disclose any confidential communication or be examined as a witness in any civil or criminal proceeding as to any confidential communication without the written consent of the victim or a representative of the victim." 735 ILCS § 5/8-802.1(d). Michigan law recognizes a similar privilege over victim statements to sexual assault counselors. *See* Mich. Comp. Laws § 600.2157a. While these state statutes are not controlling

in this Court[3], they serve as persuasive authority that victim/rape crisis counselor communications should receive a degree of privilege comparable to patient/psychotherapist communications.

At this point in time, it does not appear that there is clearly established federal law that answers whether and when a victim's psychotherapist/patient privilege must yield to a criminal defendant's desire to use such privileged information in his defense. *See Batey v. Haas*, Case No. 05-73699, 2013 WL 1810762, at *10 (E.D. Mich. Apr. 30, 2013), aff'd, 573 Fed. App'x. 590 (6th Cir. 2014) (citing *Johnson v. Norris*, 537 F.3d 840, 845–47 (8th Cir. 2008)).

Two recent opinions from this district weighed these competing concerns, and reached different conclusions. The first case, *United States v. Castillo*, Case No. 16-20344, 2016 WL 4761777 (E.D. Mich. Sept. 13, 2016), ordered that a victim's psychological and medical records be produced to the court for in camera review, where the defendant made a showing that the records contained information about the victim's medical history that was potentially exculpatory. The victim was

---

[3] *See U.S. v. Nelson*, 486 F.Supp. 464 (W.D. Mich. 1980) (privileges in federal criminal actions are determined by federal common law and not by state statutes); *see also U.S. v. Simmons*, 964 F.2d 763 (8th Cir. 1992), rehearing denied, certiorari denied 113 S.Ct. 632, 506 U.S. 1011, 121 L.Ed.2d 563 (in federal criminal cases, federal law of privilege applies).

anticipated to be the Government's sole witness at trial. The defendant in *Castillo* was charged with sexually assaulting a victim while she was asleep – allegedly under the influence of prescription sleep aid medication – and after she had allegedly denied giving consent. The defendant acknowledged that the victim was on sleep medication, but argued that she had previously given consent to engage in sexual acts while she was asleep. It appears, then, in *Castillo* that the question of Defendant's guilt or innocence turned heavily on the victim's testimony, and her use of prescription medication, and the effects of such medication was relevant to the defense. Thus, in *Castillo*, the court ordered production of the victim's counseling and medical records for *in camera* review, because the defendant articulated specific facts pertaining to the probative value of the records.

By contrast, in *United States v. Neuhard*, Case No. 15-20425, 2016 WL 6871454, at \*10 (E.D. Mich. Nov. 22, 2016), the Court denied the defendant's application for a Rule 17 subpoena seeking counseling and psychological records of minor victims in a child pornography case. *Neuhard* recognized the presumptive confidentiality of such records, and ultimately concluded that the defendant failed to articulate "specif-

ic facts pertaining to the high probative value of the records," sufficient to overcome that privilege. The case before the Court is more akin to *Nuehard* than to *Castillo*.

Since *Bowman Dairy* and *Nixon*, criminal defendants seeking Rule 17(c) subpoenas have been required to make a preliminary showing that the evidence being sought is specific, relevant, and admissible. Where the information being sought is a witness's prior statements for impeachment, a sufficient threshold showing would therefore need to include facts showing that (1) a government witness made a *specific* statement to a third-party; (2) the witness's statement to the third-party is *relevant* because it relates to the subject matter of the witness's testimony; and (3) there is a good faith factual basis to believe that the witness's statement to the third-party will be *admissible* because it is likely to have impeachment or exculpatory value.

Defendant has failed to articulate with specificity the relevant and admissible evidence that he believes may be contained in any of the records being sought. Defense counsel concedes that he does not know whether such records would be helpful or necessary to the defense because he has not seen them.

Defendant posits that, because the counseling occurred shortly after the incident, P.W. likely made statements to the counselor pertaining to Defendant's alleged sexual abuse of the victim. These allegations, though thin,[4] are sufficient to make a preliminary showing of a likelihood that the witness made a *specific* statement (to the counselor as part of treatment) and that the statement was *relevant* because it likely pertained to the subject matter of the witness's testimony (the alleged sexual abuse by Defendant). Defendant does not make an adequate preliminary showing regarding admissibility, however. Although Defendant seeks production of the counselor's records because he believes they may possibly be useful for impeachment – which would make them admissible – Defendant has articulated no specific factual basis for believing that the records contain any inconsistent statements or exculpatory information.[5] Defendant concedes that "it is impossible

---

[4] It should be noted that Defendant is actually unaware for certain whether P.W. made statements about the sexual abuse to the counselor, whether the counselor made any records of statements made by P.W., or what the content of any such statements was. Nevertheless, the undisputed facts is that P.W. saw a mental health counselor shortly after experiencing a traumatic event, and these facts are sufficient to show a likelihood that statements were made and that they likely related to the sexual abuse.

[5] The Government argued during the hearing that Defendant is already in possession of ample impeachment material, given that P.W. recounted two different versions of the events to law enforcement in videotaped interviews. The Government's argument, however, cuts both ways. On the one hand, Defendant can unquestiona-

for Defendant to apprise the Court whether or not the records are admissible without viewing them; that is the Court's role" (Dkt. 54 at 10). Consequently, Defendant fails to make the threshold showings needed to support a request for issuance of a Rule 17(c) subpoena. Instead of seeking to compel production of the records through the subpoena, therefore, Defendant asks the Court to receive the records *in camera* and only release them to Defendant after the witness testifies if they appear to contain impeachment material.[6]

---

bly use P.W.'s divergent videotaped statements to impeach his credibility during cross-examination, thereby reducing Defendant's need to look for inconsistent statements in the counseling records. On the other hand, according to the facts described at the hearing, P.W.'s later statement to the FBI, which included the sexual assault allegations against Defendant, occurred after P.W. had begun attending counseling. If evidence should be presented suggesting that these records contain statements showing how, when, or why P.W.'s story changed, the Court would reconsider whether Defendant can make a preliminary showing of their admissibility.

[6] The Court does not accept the argument that whenever a defendant is unable to make a preliminary showing of admissibility, the proper approach is to require production of the records *in camera* so that the Court can monitor the proceedings and then release the records in the event that developments during the course of the trial suddenly render them admissible. Defendant has an obligation to make some kind of factual showing supporting a reasonable belief that the records will contain inconsistent statements or exculpatory information – even for the Court to require the records to be produced for *in camera* review. Without such a requirement, a defendant could seek *in camera* review of any and all statements by government witnesses made to third-parties, and conscript the Court into document-review service, hunting for inconsistencies and exculpatory material to be released as the trial proceeds. Nothing in the case law interpreting Rule 17(c) suggests that it was intended to permit such a practice.

Defendant's primary argument in support of this approach is Defendant's Sixth Amendment rights under the Confrontation Clause (Dkt. 54 at 12-13). A criminal defendant's right to confront adverse witnesses at trial however, does not necessarily give rise to an absolute right to discovery of confidential or privileged information for impeachment purposes. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 53–54 (1987). In *Ritchie*, a plurality held that a defendant's right to be confronted with witnesses against him was not violated when a child protective service agency refused to turn over its confidential records to him, because those records were privileged under state law. *Id.* at 43–46. The *Ritchie* plurality determined that "the right to confrontation is a trial right" and declined "to transform the Confrontation Clause into a constitutionally compelled rule of pretrial discovery." *Id.* at 52. In so finding, they stated that "[t]he ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Id.* at 53.

The Court agrees with the analysis set forth in *Nuehard*, and finds Defendant's Sixth Amendment argument unavailing. *See Wil-*

*liams v. Bauman*, 759 F.3d 630, 636 (6th Cir. 2014), cert. denied, 135 S. Ct. 876 (2014) ("But both we and the Supreme Court have observed that a trial court's denial of a defendant's request to access potential impeachment evidence does not necessarily violate a defendant's confrontation rights").

Since Defendant has not provided specific, relevant, and admissible information about what P.W.'s counseling records contain that is exculpatory, the Court does not find that an *in camera* review of these records is called for at this time. If Defendant develops articulable reasons to believe that P.W. made inconsistent statements to his counselor, or that such records contain exculpatory information, and Defendant is sets out a factual basis for this belief, the Court will reconsider the question whether *in camera* production of the records is appropriate. On the record before the Court, Defendant has failed to make a sufficient showing that the sought after records contain specific, relevant *and* admissible evidence. Consequently, the request to cause the issuance of Rule 17 subpoena must be denied.

As such, for the reasons set forth above,

Defendant's ex parte application for a Rule 17 subpoena (Dkt. 48)

is **DENIED**;

The Government's motion to quash (Dkt. 50) Defendant's application is **GRANTED**.

**IT IS SO ORDERED.**

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated:  May 25, 2017

## Certificate of Service

I hereby certify that this Order was electronically submitted on May 25, 2017, using the CM/ECF system, which will send notification to each party.

s/A. Chubb
Case Manager