UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

T. HERBERT FELTON, JR.,

Defendant.

Case No. 14-20529
Hon. Terrence G. Berg

**OPINION AND ORDER DENYING
DEFENDANT'S MOTION FOR NEW TRIAL (DKT. 83)**

**I.  Introduction**

Defendant T. Herbert Felton, Jr. was convicted after a five-day jury trial of Interstate Transportation of Minor to Engage in Criminal Sexual Activity (Count 1 – 18 U.S.C. § 2423(a)); Use of Facility of Interstate Commerce to Entice a Minor (Count 2 – 18 U.S.C. § 2422(b)); three counts of Manufacturing Child Pornography (Counts 5, 7 & 9 – 18 U.S.C. § 2251); three counts of Receipt of Child Pornography (Counts 6, 8 & 10 – 18 U.S.C. § 2252A(a)(2), 18 U.S.C. § 2252A(b)(1)); and one count of Possession of Child Pornography (Count 11 – 18 U.S.C. § 2252A(a)(5)(B), 18 U.S.C. § 2252A(b)(2)). The guilty verdict was filed by the Clerk on June 23, 2017.

On November 15, 2017, Defendant filed a motion for a new trial (Dkt. 79).[1] The main argument presented in Defendant's motion is that the Government improperly withheld certain potentially exculpatory evidence. Defendant also argues that cumulative errors deprived him of a fair trial.

The Government filed a response to Defendant's motion (Dkt. 89), and the Court held a hearing on February 23, 2018. For the reasons set forth below, Defendant's motion for a new trial is **DENIED**.

## II. Background

The following facts were established at trial. On May 7, 2014, P.W., then a 14-year-old boy living in Tilton, Illinois was reported missing (Dkt. 1, Compl. ¶ 1). Video from a nearby bus station showed him boarding a bus sometime after 11:45 a.m. *Id.* P.W.'s father obtained his son's cell-phone records, and noticed that they contained calls with an unfamiliar out-of-state number with an "810" area code. *Id* ¶ 2. On May 8, 2014, P.W.'s father travelled to Michigan, and met with a police detective. *Id.* The detective was able to trace the unknown 810 telephone number to Defendant, who was living in Flint, Michigan. *Id.* Around midnight that same day, police arrived at Defendant's home, and located both Defendant and

---

[1] On November 16, 2017 Defendant filed a corrected motion for a new trial (Dkt. 83) which removed information included in the first filing that might have inadvertently identified the minor victim.

P.W. *Id*. Defendant was arrested, and P.W. was interviewed by local police. This interview was summarized in written notes. The next day, May 9, 2014, P.W. was interviewed at the Genesee County Sheriff's Office. This interview was video-taped. Defendant was also interviewed by the police, and made a number of admissions.

Subsequent investigation revealed illicit images of P.W. on Defendant's cell-phone. This discovery led to additional charges in a superseding indictment for manufacturing, receipt, and possession of child pornography (Dkt. 53). This case was tried before a jury, beginning on June 16, 2017. At trial, eleven witnesses testified. These witnesses included P.W.'s father, two officers from the Genesee County Sheriff's Department (who interviewed Defendant and P.W.), a nurse from Hurley Hospital (who examined P.W. shortly after he was located), P.W. himself, two lab technicians from the Michigan State Police (who testified, among other things, about DNA evidence that suggested sexual contact between Defendant and P.W.), FBI Special Agent Henrik Impola, and a Michigan State Police forensic examiner (who testified about the electronic data recovered from Defendant's cell phone). P.W. testified that he met Defendant online and over a period of time sent Defendant a number of sexually explicit images of himself and that the two of them engaged in "phone sex." Eventually, P.W. testified, Defendant traveled to P.W.'s town in Illinois, met him and took him by bus and

train to Defendant's home in Flint, Michigan, where Defendant then provided P.W. with alcohol and marijuana and they engaged in sexual intercourse. Defendant was convicted on all counts.

In his motion for a new trial, Defendant argues that "[a]fter the [Presentence Report] PSR was generated, the Defense discovered it contained information, previously unknown to the Defense, that P.W. used 'Naughtymeetings.com' to initially communicate with Mr. Felton." (R. 83: Defendant's Brief at p. 8). The Government correctly points out, however, that this information was initially disclosed on June 5, 2014, in the affidavit filed with the criminal complaint. Paragraph 7 of the affidavit provides in part that "the chat rooms PW and Felton communicated in were rooms associated with sexual encounters, i.e. 'naughtymeetings.com'" (Dkt. 1: Complaint).

Defendant next complains that he should have received a copy of "police reports" prepared by FBI Special Agent India Jones.[2] He

---

[2] Special Agent Jones served as the original case agent for this matter. In March 2015, S/A Jones was transferred to the Sacramento, California FBI office. S/A Jones submitted a declaration stating that she never formally interviewed P.W., and only had one brief conversation with him at the Genesee County Sheriff's Department, which consisted of introducing herself, and telling P.W. that he had not done anything wrong. She also told P.W. that the FBI would like to schedule a forensic interview, which was later conducted (not by S/A Jones), and videotaped. This taped interview was provided to the defense. S/A Jones did not testify at Defendant's June 2017 trial. Rather, the new case agent – FBI S/A Henrik Impola – testified.

claims that the reports contain newly discovered evidence including: (1) details of dating websites (naughtymeetings.com, discussed above); (2) a statement by P.W. that he lost his phone in Illinois, (which contradicted P.W.'s trial testimony that Defendant threw P.W.'s phone off of a train in Michigan); and, (3) that P.W. sent sexually explicit messages and child pornography to another individual. Finally, Defendant contends that certain other "cumulative" errors deprived him of a fair trial.

### III. Standard of Review

Defendant's motion for a new trial is brought under Federal Rule of Criminal Procedure 33. That rule provides:

> (a) Defendant's Motion. Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment.
>
> (b) Time to File.
>
> (1) Newly Discovered Evidence. Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.
>
> (2) Other Grounds. Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.

The verdict in this case was delivered by the jury on June 22, 2017, and filed by the Clerk on June 23, 2017 (Dkt. 77). Defendant's motion for a new trial was not filed until November 15, 2017 (Dkt. 79).[3] Thus, to the extent that Defendant's motion for a new trial is based on "other grounds" than newly discovered evidence, it was filed well past the fourteen-day deadline. Rule 33(b)(2). Therefore, all of Defendant's arguments concerning matters outside of "newly discovered evidence," are time-barred and will not be discussed.[4]

As to the "newly discovered" evidence, Defendant argues that FBI SA India Jones's reports are *Brady* material that the Government improperly suppressed. To successfully obtain a new trial under Rule 33 based on newly discovered evidence the defendant must show that the evidence: "(1) was discovered only after trial, (2) could not have been discovered earlier with due

---

[3] As previously noted, Defendant filed a corrected version of his motion for a new trial on November 16, 2017 (Dkt. 83).

[4] These arguments include the Government's not calling every witness listed on its initial witness list, and the Court's permitting a break during P.W.'s direct examination to allow other witnesses with scheduling conflicts to testify (Dkt. 83 at 16-18), before returning to P.W.'s testimony. These arguments are the basis of Defendant's "cumulative error" argument.

diligence, (3) is material and not merely cumulative or impeaching, and (4) would likely produce an acquittal if the case were retried." *United States v. Barlow*, 693 F.2d 954, 966 (6th Cir. 1982).

Similarly, under the *Brady* standard, a defendant must show, among other things, that the undisclosed evidence was "material" to his conviction or sentence. *See Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); *Jones v. Bagley*, 696 F.3d 475, 486 (6th Cir. 2012). Undisclosed *Brady* evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *United States v. Hawkins*, 969 F.2d 169, 175 (6th Cir. 1992). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."

*Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). The materiality inquiry involves weighing "the value of the undisclosed evidence relative to the other evidence produced by the state." *Eakes v. Sexton*, 592 Fed. App'x. 422, 427 (6th Cir. 2014). "[W]here the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material." *Bales v. Bell*, 788 F.3d 568, 574 (6th Cir. 2015) (internal quotation marks omitted); *see also Byrd v. Collins*, 209 F.3d 486, 518 (6th Cir. 2000).

"[T]he suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The principles in *Brady* have been extended to the disclosure of impeachment evidence

8

in cases where the "reliability of a given witness may well be determinative of guilt or innocence." *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (internal quotation marks omitted). To establish a violation of *Brady*, a defendant "has the burden of showing that the Government suppressed evidence, that such evidence was favorable to the defense, and that the suppressed evidence was material." *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007). But there is no *Brady* violation "if the defendant knew or should have known the essential facts permitting him to take advantage of the information … or if the information was available to him from another source." *Id.* (internal quotation marks omitted).

### IV. Analysis

In his motion for a new trial, Defendant posits that his "theory of the case was that, P.W. lied about his age and did not disclose it until he was in Michigan and that Mr. Felton's acts were 'stupid.'" Defendant argues that he would have been able to more effectively cross-examine P.W. about his use of the website naughtymeetings.com to first communicate with Defendant, had defense counsel

known that P.W. and Defendant used this internet chat room.[5] During oral argument on Defendant's motion for a new trial, defense counsel stated that this line of defense was primarily directed to "the top count of the indictment" (Count 1 – transporting a minor across state lines to engage in unlawful sexual activity).

Defendant's subjective belief as to P.W.'s age, however, is not a valid defense to Count 1. Ignorance of the victim's age provides no safe harbor from the penalties in 18 U.S.C. § 2423(a). If someone knowingly transports a person for the purposes of another sex offense, the transporter assumes the risk that the victim is a minor, regardless of what the victim says or how old the victim appears. *See United States v. Daniels*, 653 F.3d 399, 410 (6th Cir. 2011). This is likewise true of Defendant's production of child pornography convictions, as "knowledge of the victim's age is neither an element of the offense nor textually available as an affirmative defense." *United States v. Humphrey*, 608 F.3d 955, 962 (6th Cir. 2010). As such, the main premise of Defendant's motion for a new trial is unfounded, as Defendant's knowledge, or lack thereof, of P.W.'s specific age is simply not material to Defendant's guilt or innocence.

---

[5] While it is not entirely clear what line of questioning Defendant intended to direct toward P.W. relating to his use of the "naughtymeetings.com" website, it appears that Defendant may have been seeking to imply that, because P.W. accessed an adult chat-room to communicate with Defendant in the first instance, it was not unreasonable for Defendant to believe he was communicating with an adult.

In any event, Defendant's counsel thoroughly cross-examined P.W. at trial, exploring issues as varied as P.W.'s admission that he lied about his age, his access and use of adult-dating websites, and his initial false statements to Defendant that he was 18 years old. The jury appears to have credited P.W.'s testimony despite this cross-examination, and nothing in the record suggests that conducting a new trial to include evidence of P.W.'s specific use of the website naughtymeetings.com would produce an acquittal. Furthermore, the fact that P.W. communicated with Defendant over naughtymeetings.com was disclosed in the affidavit attached to the complaint in this matter (Dkt. 1). Thus, this specific information was readily ascertainable—indeed, it was made part of the public docket of the case—and there is no reason to believe that explicitly cross-examining the victim about this chat-room would have made any difference at trial when P.W. already admitted to misrepresenting his age and using other adult-only sites. This ground offers no basis for a new trial.

Defendant's remaining two specific areas of "newly discovered evidence" raised in his motion for a new trial are: (1) that P.W. allegedly had sexually explicit conversations with, and sent nude pictures (i.e., child pornography) of himself to another unidentified individual; and (2) that P.W. initially told the police that he "lost" his

cell phone in Illinois.[6] As to P.W.'s alleged sexual interactions with others, this information likely would not even have been admissible (*see* Fed. R. Evid. 412(a)), and is completely immaterial. Moreover, even if such evidence were admissible, it would not have affected the outcome of the trial because the fact that P.W. may have interacted in a sexual manner with others online is not in any way probative of Defendant's own guilt or innocence.

As to P.W.'s prior inconsistent statements that he "lost" his cell phone, they may have been able to be used to impeach P.W.'s trial testimony to the effect that Defendant threw the phone off the train when they were travelling together. But undermining P.W.'s account of the fate of his cell phone would clearly not be enough to shake the foundation of the jury's verdict. During cross-examination, P.W. readily admitted that he lied to the police during his initial interviews, and that he gave inconsistent accounts (*see, e.g.*, Dkt. 87, Tr. of P.W.'s trial testimony, Pg ID 776, lines 13-24) because he did not want to get Defendant in trouble. Proof of an additional example where P.W. was shading the truth to protect the Defendant would have been merely cumulative, and does not warrant a new trial.

---

[6] P.W. later testified at trial that Defendant threw P.W.'s cell phone off of a train, because P.W. and Defendant thought that the police were tracking them (Dkt. 87, Tr. of P.W. trial testimony, Pg ID 721, lines 9-19).

12

## V. Conclusion

For the foregoing reasons, Defendant's motion for a new trial (Dkt. 83) is **DENIED**.

**SO ORDERED.**

<pre>                          s/Terrence G. Berg
                          TERRENCE G. BERG
                          UNITED STATES DISTRICT JUDGE</pre>

Dated: April 26, 2018

## Certificate of Service

I hereby certify that this Order was electronically submitted on April 26, 2018, using the CM/ECF system, which will send notification to each party.

<pre>                          s/A. Chubb
                          Case Manager</pre>